Andrew W. Stavros (8615)
**STAVROS LAW P.C.**
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: (801) 758-7604
Fax: (801) 893-3573
Email: andy@stavroslaw.com

*Attorney for Plaintiff Brandi Schaffran-Webb*

# IN THE UNITED STATES DISTRICT COURT IN AND FOR

# THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRANDI SCHAFFRAN-WEBB, a.k.a. BRANDI GARD-WEBB, an individual, | **COMPLAINT** |
| Plaintiff, | (JURY DEMAND) |
| vs. | Case No: |
| SENTRY FINANCIAL CORPORATION, a Utah corporation, | Judge: |
| Defendant. | |

Plaintiff Brandi Schaffran-Webb ("Plaintiff," or "Schaffran-Webb"), by and through her undersigned attorney, brings this complaint ("the Complaint") against Sentry Financial Corporation, a Utah corporation ("Defendant," or "Sentry"), and for causes of action alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.  Plaintiff is a resident of the state of Utah.

2.  At all times relevant to this Complaint, Plaintiff was employed by Sentry in Salt Lake County, state of Utah.

1

3. Sentry is a Utah corporation based in Salt Lake County that conducts business as a financial firm that offers financial services to companies including financing for equipment, real estate, media and entertainment, pantry, and dining.

4. Plaintiff has exhausted her administrative remedies, having filed a charge of discrimination and retaliation with the Utah Labor Commission and Equal Employment Opportunity Commission and obtained a right to sue letter dated May 29, 2020 from the Equal Employment Opportunity Commission.

5. This Court has jurisdiction pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f) ("Title VII"), from claims arising from the actions of Sentry in violation of Title VII. This Court further has jurisdiction under the Civil Rights Act of 1870, 42 U.S.C. § 1983.

6. The employment practices alleged to be unlawful were committed in Salt Lake County, state of Utah, which is within the jurisdiction of the U.S. District Court for the District of Utah, Central Division of Utah. Accordingly, venue is proper pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1391.

7. At all times relevant to this Complaint, Plaintiff was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e(f).

8. At all times relevant to this Complaint, Sentry was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

## FACTUAL ALLEGATIONS

9. Plaintiff is female.

10. On or about June 25, 2018, Plaintiff was hired by Sentry as its Creative Director. Plaintiff was later promoted to Vice President of Marketing on or about January 1, 2019.

11. During Plaintiff's employment with Sentry, Plaintiff and other female employees were continually subjected to sexual harassment and discriminated against because of their sex by the CEO of Sentry, Jonathan Ruga, CEO of Vavani (a company doing business as Sentry), Jared Ruga, and Steve Auerbach.

12. Plaintiff was further subjected to retaliation when she was terminated from her employment after making complaints to Sentry regarding the sexual harassment and inappropriate conduct toward her and other female employees of Sentry.

13. Jonathan Ruga, Jared Ruga, and Mr. Auerbach's sexual harassment of Plaintiff (and other employees), and inappropriate behavior of a sexual nature, was severe and/or pervasive and continually interference with Plaintiff's employment with Sentry, her ability to do her job, and her wellbeing.

14. Throughout her employment, Plaintiff (and others) witnessed, were made privy to, and/or were otherwise subjected to sexual harassment by Steve Auerbach. This included being told inappropriate jokes and comments of a sexual nature which were highly offensive.

15. Following each incident, Jared Ruga was informed of the conduct of Mr. Auerbach. However, neither Mr. Ruga nor Sentry made any effort to change the behavior and instead, Plaintiff (and others) were continuously subjected to harassment on the basis of their sex.

16. For example, or about May 17, 2019, Marissa Peterson, a colleague, was walking in the office with Steve Auerbach. On the way down a hallway, Mr. Auerbach paused and peered into a room. Ms. Peterson then turned around and observed Mr. Auerbach staring and ogling at Kate Denton, a female colleague, while she was bending over to plug in computer

cords. Ms. Peterson then made a noise to catch Mr. Auerbach's attention. Mr. Auerbach looked at Ms. Peterson and stated, "Kate should divorce Peter (a co-worker and office mate)."

17. On or about May 20, 2019, during a discussion among Ms. Peterson, Ms. Denton, and Kristy Johnson (a female colleague) and Plaintiff, Plaintiff was made aware of the incident involving Mr. Auerbach while talking with Ms. Peterson.

18. Additionally, Plaintiff was informed of another occasion wherein Mr. Auerbach made an inappropriate joke to Ms. Johnson about sex and prostitutes.

19. After discovering the ongoing conduct, Plaintiff, Ms. Peterson, Ms. Denton, and Ms. Johnson reported Mr. Auerbach's harassment to Jared Ruga. During the conversation they expressed that they felt like they were prisoners because of Mr. Auerbach's behavior, which included prolonged staring at body parts (breasts, buttocks) and sexually explicit jokes and comments.

20. While Jared Ruga agreed that females in the office were being treated poorly, he did nothing to stop the conduct or appropriately discipline Mr. Auerbach.

21. On or about June 3, 2019, Plaintiff received an email from Mr. Auerbach. In the email, Mr. Auerbach commented that he had discovered a city named Cockeysville, Maryland, and that when he discovered the city he "got excited."

22. Plaintiff immediately responded to the email from Mr. Auerbach and notified him that his email made her feel uncomfortable and that she did not appreciate his sexual innuendos and requested that he cease talking to her in that manner.

23. The following day Plaintiff forwarded the email thread to Jared Ruga to report Mr. Auerbach's continued inappropriate behavior of a sexual nature.

24. On or about June 6, 2019, Plaintiff attempted to follow up with Jared Ruga regarding the status of her complaint. While attempting to speak with Mr. Ruga, Plaintiff discussed the ongoing concerns with Jared Ruga's Executive Assistant, Pam Halverson, who stated, "I don't understand why he [Steve] is still here and he makes me uncomfortable too."

25. The following day, Plaintiff saw Jared Ruga in the office and attempted to speak with him about her complaint. Instead of speaking with Plaintiff, Jared Ruga dismissed her, avoided contact and walked away.

26. In addition to Mr. Auerbach's conduct, Plaintiff was subjected to unwanted and inappropriate touching by Jonathan Ruga. Jonathan Ruga would regularly touch and rub the shoulders and backs of female employees in the office, including Plaintiff, which made Plaintiff and other employees extremely uncomfortable.

27. Plaintiff reported this conduct to both Jared Ruga and Tina Ruga (Jonathan's wife).

28. While both Jared Ruga and Tina Ruga did address this complaint with Jonathan Ruga, Jonathan Ruga simply responded: "that's just how I am." On information and belief, no discipline was issued to Jonathan Ruga, no training was provided to him and no remedial steps were taken to correct the behavior.

29. On or about May 14, 2019 – apparently upset that his father was engaging in inappropriate behavior – Jared Ruga sent a text message to Jonathan Ruga stating: "If you can't see why creating a hostile work environment for women is a problem, you're very clearly part of the problem."

30. Despite Jared Ruga's comment to Jonathan Ruga, Jonathan's inappropriate touching continued.

31. Additionally, during Plaintiff's employment Jared Ruga regularly made jokes and comments of a sexual nature directed at Plaintiff or in front of Plaintiff and other female employees. For example, on one occasion Jared Ruga wrote a speech for Ms. Johnson regarding her traumatic history. The speech included sexual innuendos and other inappropriate comments regarding Ms. Johnson which were highly offensive and made employees feel uncomfortable. On other occasions Mr. Jared Ruga would regularly talk about how he "loved sucking dick and how he could dislocate his jaw" in front of Plaintiff and other employees.

32. Plaintiff and other female employees were also treated poorly by Jonathan Ruga and other executives. This included being berated, belittled, and treated disparately as compared to male employees, and otherwise subjected to disparate terms and conditions of employment.

33. For instance, prior to being hired, Benjamin Reece, a male colleague, applied for the Creative Director Position, which Plaintiff was later hired for.

34. After being hired, Plaintiff was informed by Jared Ruga that Mr. Reece was unqualified for the position; however, a COO position was later created at Vavani Productions wherein Mr. Reece was offered a higher salary. In addition to the higher salary, Jared Ruga also agreed to pay all of Mr. Reece's moving expenses.

35. At the time of Plaintiff's hire, Plaintiff was living in Atlanta, Georgia. As such, Plaintiff was forced to move from Atlanta to Salt Lake City. After notifying Jared Ruga of her plans to relocate to Salt Lake City, Plaintiff was not offered relocation expenses like Mr. Reece.

36. Unlike her male counterparts, Plaintiff was required to track her hours, write three-page reports on professional development trips, and not allowed to engage in freelance work or be paid for work after hours. She was also forced to use her own personal equipment and request approval for every purchase she made with the company credit card.

6

37. Furthermore, Plaintiff was belittled by Jonathan Ruga during company meetings. For instance, Jonathan Ruga would dismiss Plaintiff and/or speak over Plaintiff by stating, "Brandi, this is what you meant to say…" and/or make other remarks related to her comments during meetings. Male employees, however, were not treated in a similar manner by Mr. Ruga.

38. After complaining multiple times, Plaintiff was terminated from her employment on or about June 12, 2019.  The reasons for her termination were false.

39. Since her termination, and because of the continued harassment and discriminatory practices, at least seven (7) female employees have left Sentry.

40. When Plaintiff was terminated, she was not paid all wages due and owing to and she was not reimbursed for business expenses she had incurred on behalf of Sentry.

41. Plaintiff is owed at least $3,356.34 in unpaid wage and expenses, or such other additional amount as proved at trial.

42. On or about August 12, 2019, Plaintiff sent a letter to Sentry to demand payment for the above wages. After she received a response from Sentry, on June 10, 2020 Plaintiff sent another demand letter requesting payment of any unpaid wages and expenses.

43. To date, Plaintiff still has not been paid her wages or reimbursed her expenses.

## FIRST CAUSE OF ACTION
### (Sexual Harassment in Violation of Title VII of the Civil Rights Act)

44. Plaintiff hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

45. Plaintiff is female and thus a member of a protected class under Title VII.

46. Title VII prohibits discrimination based on sex in the enjoyment of all benefits, privileges, terms, and conditions of employment.

47. As more fully set forth above, Plaintiff was subject to unwelcome harassment because of her sex, that altered and interfered with the benefits, privileges, terms, and conditions of her employment with Sentry.

48. The harassment experienced by Plaintiff during her employment with Sentry was severe and/or pervasive and altered the conditions of her employment and created and abusive and hostile working environment.

49. Defendant Sentry knew, or reasonably should have known, through its management-level employees that Plaintiff was being subject to sexual harassment and a hostile work environment.

50. Furthermore, the conduct complained of by Plaintiff was unwelcome, offensive, sexual in nature and/or directed at Plaintiff because of her sex.

51. Defendant Sentry knew or should have known about the conduct to which Plaintiff was subjected to and failed to implement prompt and appropriate corrective action.

52. Defendant Sentry had a duty to maintain a workplace free from sexual harassment and retaliation.  Notwithstanding such duty, Defendant Sentry failed to take sufficient actions to maintain a workplace free from harassment, discrimination, and retaliation.

53. Defendant Sentry failed to establish, monitor and enforce and effective anti-harassment policy, had no clear and effective mechanism in place to allow Plaintiff to report sexual harassment, and knowingly or negligently failed to supervise its employees in a manner that would prevent the harassment and hostile work environment experienced by Plaintiff.

54. Defendant Sentry took tangible action against Plaintiff by terminating her and is strictly liable for the harassment Plaintiff was subjected to by her superiors.

55. Alternatively, Sentry was negligent and is responsible for permitting the behavior of Jonathan Ruga, Jared Ruga, and Steve Auerbach and others toward Plaintiff because its management-level employees knew, participated in, or should have known of the hostile environment Plaintiff was subjected to and they did not adequately respond to constructive or actual notice of the hostile work environment.

56. Defendant Sentry's actions or inactions have directly and proximately cause Plaintiff substantial past and future economic loss, including lost wages, benefits, and other compensation, and compensatory damages, including non-pecuniary losses for emotional distress, and damage to her career and professional reputation, and humiliation, pain and suffering, in an amount to be determined at trial.

57. Defendant Sentry's actions were taken with malice and were wanton, reckless, and in knowing disregard of Plaintiff's legal rights, and, as such, renders Defendant Sentry liable for punitive damages.

58. Plaintiff is also entitled to recover all attorneys' fees and costs expended in prosecuting this action.

## SECOND CAUSE OF ACTION
### (Sex Discrimination in Violation of Title VII)

59. Plaintiff hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

60. Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination by an employer against an employee because of the employee's sex.

61. The adverse employment actions taken against Plaintiff as set forth above, including Plaintiff's termination, were motivated by Plaintiff's sex.

62.     Sentry's actions have directly and proximately caused Plaintiff substantial past and future economic loss, including lost wages and benefits, as well as compensatory damages, including non-pecuniary losses for damage to her career and professional reputation, humiliation, pain, and suffering, and other losses in an amount to be determined at trial.in an amount to be determined at trial.

63.     Sentry's unlawful conduct toward Plaintiff in violation of Title VII was done intentionally and/or maliciously, or in reckless disregard for her federally protected rights, entitling Plaintiff to an award of punitive damages.

64.     Plaintiff is also entitled to her reasonable expenses and attorneys' fees pursuant to Title VII, and such further an additional relief as may be available under the law, in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
**(Retaliation in Violation of Title VII of the Civil Rights Act)**

65.     Plaintiff hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

66.     Title VII prohibits retaliation against any employee for engaging in opposition to discrimination and harassment on the basis of sex.

67.     Plaintiff engaged in protected activity by opposing the treatment she received, which she believed in good faith constituted unlawful discrimination and harassment, and by complaining about the discrimination and harassment, among other things, as alleged above to management-level employees who had a duty to take action in response to Plaintiff's complaints.

68.     The actions of Sentry in terminating Plaintiff because of her protected activity constitutes retaliation prohibited by Title VII.

69. Defendant Sentry's actions have directly and proximately caused Plaintiff substantial past and future economic loss, including lost wages, benefits, and other compensation, including compensatory damages and non-pecuniary losses for emotional distress, and damage to her career and professional reputation, and humiliation, pain, and suffering, in an amount to be determined at trial.

70. Defendant Sentry's actions were taken with malice and were wanton, reckless, and in knowing disregard of Plaintiff's legal rights and, as such, render Defendant liable for punitive damages.

71. Plaintiff is also entitled to recover all attorneys' fees and costs expended in prosecuting this action, and such further and additional relief as allowed by law, in an amount to be determined at trial

## THIRD CAUSE OF ACTION
### (Breach of Contract)

72. Plaintiff hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

73. Plaintiff entered in a valid and enforceable employment contract concerning the wages she would be paid for work she performed for Sentry, and the expenses that would be reimbursed to her for expenses she incurred on behalf of Sentry to perform her work.

74. Plaintiff performed as agreed under the terms of the agreement she had with Sentry.

75. Sentry breached the contract by failing to pay Plaintiff her wages and to reimburse her expenses as agreed.

76. Sentry's breach caused Plaintiff to suffer damages.

77. Plaintiff seeks recovery of all general, special, and consequential damages caused by Defendant's breach, but in no case an amount less than amount of her demand for wages and compensation to Sentry.

78. In addition, because Sentry failed to pay Plaintiff's wages after demand, Sentry is also liable for Plaintiff's attorneys' fees pursuant to Utah Code Ann. § 34-27-1, to be taxed as costs.

## FOURTH CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

79. Plaintiff hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

80. As alleged, Plaintiff and Sentry entered into an agreement concerning the wages and compensation paid to her.

81. A covenant good faith and fair dealing inheres in every contract under Utah law, including the contract between Sentry and Plaintiff alleged herein.

82. The relationship between Plaintiff and Sentry was a special relationship based upon reliance and trust and Sentry was obligated to deal with Plaintiff fairly and in good faith and not intentionally or purposely do anything to destroy or injure Plaintiff's right to receive the fruits of the contract, and to realize the parties' justified expectations relating thereto.

83. Defendant Sentry breached its duty of good faith and fair dealing by, among other things, intentionally and purposefully failing to perform as required under the contract, failing to act on promises and representations made to Plaintiff, including failing to pay her wages for work performed and to reimburse Plaintiff for business expenses she incurred, and thereby acted

in a manner inconsistent with the common purpose of the contract and the justified expectations of the parties.

84.	As a direct result of Sentry's breach of its duty to act in good faith and deal fairly, Plaintiff has been damaged in an amount to be proved at trial.

85.	In addition, because Sentry failed to pay Plaintiff's wages after demand, Sentry is also liable for Plaintiff's attorneys' fees pursuant to Utah Code Ann. § 34-27-1, to be taxed as costs.

## FIFTH CAUSE OF ACTION
**(Promissory Estoppel – Alternative Cause of Action)**

86.	Plaintiff hereby incorporates as though restated each of the factual allegations set forth in the preceding paragraphs of the Complaint.

87.	Sentry's promise to pay Plaintiff compensation for work she performed and to reimburse her for business expenses she incurred on its behalf, was clear and unambiguous.

88.	As alleged above, Sentry breached its promises to pay Plaintiff wages for all the work she performed and to pay for expenses incurred by her.

89.	Plaintiff relied upon the foregoing promises of Sentry by performing work and incurring the expenses referenced above.

90.	Plaintiff's reliance was reasonable and foreseeable.

91.	As a direct and proximate result of Sentry's actions, as alleged above in failing to pay wages and reimburse expenses, Plaintiff has been damages in an amount to be proved at trial, but in no case less than the amount of her June 10, 2020 demand for wages.

92.	In addition, because Sentry failed to pay Plaintiff's wages after demand, Sentry is

also liable for Plaintiff's attorneys' fees pursuant to Utah Code Ann. § 34-27-1, to be taxed as costs.

## JURY DEMAND

Pursuant to Fed. R. Civ. 38, Plaintiff demands a trial by jury on all issues that are triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief against Defendant as follows:

1. For judgement in Plaintiff's favor and against Defendant for violation of Title VII of the Civil Rights Act, as applicable;

2. For an order awarding Plaintiff all lost wages, benefits, compensation and other economic losses suffered by Plaintiff because of Defendant's actions and omissions, including back pay and front pay (in lieu of reinstatement);

3. For an order awarding compensatory damages, including pecuniary damages and non-pecuniary damages for pain, suffering, humiliation, and emotional distress and related damages, in an amount to be determined at trial;

4. For an order awarding Plaintiff attorney fees and costs of suit, including expert witness fees, incurred in bringing this action, as applicable;

5. For an order awarding general, special, and consequential damages, as applicable;

6. For an order awarding punitive damages, as applicable;

7. For an order awarding pre-judgment and post-judgment interest as allowed by law; and

8. For such other and further relief as the Court deems just and equitable.

DATED this 4th day of August, 2020.

                                                **/s/ Andrew W. Stavros**
                                                Andrew W. Stavros
                                                STAVROS LAW P.C.
                                                *Attorney for Plaintiff Brandi Schaffran-Webb*

**Serve Defendant at:**

Sentry Financial Corporation
c/o Jonathan M. Ruga, Registered Agent
201 South Main Street, Suite 1400
Salt Lake City, Utah 84111